```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

United States of America,         :  CIVIL ACTION
                                  :
                                  :  04-cv-4500
                                  :  98-cr-450-1
        v.                        :
                                  :
Kevin Robert Caden                :
```

**MEMORANDUM AND ORDER**

**Joyner, J.**                                    **December 12, 2007**

Presently before the Court is Kevin Robert Caden's ("Caden") Motion for *Habeas Corpus* pursuant to 28 U.S.C. § 2255 ("Section 2255") (Doc. No. 144), the Government's Opposition (Doc. No. 151), Caden's Rebuttal (Doc. No. 153), the Government's Response thereto (Doc. No. 154), and Caden's Rebuttal to the Government's Response to Caden's Rebuttal (Doc. No. 156).  For the reasons below, the Court **DENIES** Caden's motion.

### I. Background

On August 12, 1998, agents of the Drug Enforcement Administration ("DEA") executed a federal search warrant at a garage at 258 Hortter Street in Philadelphia, Pennsylvania. Petitioner Caden was present inside the garage during the execution of the search.  While at this location, agents seized numerous drug manufacturing instruments, drug paraphernalia, methamphetamine and other chemicals (including a 125 gallon monomethylamine gas cylinder containing approximately 70 lbs. of

monomethylamine gas and phenyl-2-propanone ("P2P")). Caden was subsequently arrested and charged with various methamphetamine manufacturing crimes.

Later that month, during the execution of a second search warrant at Scully Welding Supply, Inc., federal agents discovered documents verifying that Caden, under an alias, had purchased from Scully, two 125 gallon gas cylinders containing methylamine in March and April 1997, neither of which had been returned to the company. Agents matched the serial number located on one of the cylinders found during the search of the garage on Hortter Street to records recovered during the search at Scully.

Subsequently, during the execution of a third search warrant at 5803 Woodland Avenue in Philadelphia, Pennsylvania, agents recovered a second gas cylinder containing a serial number matching records obtained during the earlier search at Scully. Further, during the search of this location, agents discovered David Chorin, Caden's co-defendant in this case, asleep at the premises. Agents seized additional items from this location including, but not limited to, glass jars containing liquid methylmine and a safe containing mercuic chloride.

At Caden's trial, a forensic chemist with the DEA, Charles Cusamano, testified as an expert in the field of forensic chemistry and the manufacturing of methamphetamine. He testified as to the chemical formulas and methods necessary to manufacture

methamphetamine and concluded that the items recovered at the Hortter Street location constituted a methamphetamine laboratory. With regard to the Woodland Avenue location, Mr. Cusamano also concluded that the items recovered at that location, with the exception of mercuric chloride, are used to convert methylamine gas to methylamine liquid, which is used to manufacture methamphetamine.

On December 3, 1999, a jury in the Eastern District of Pennsylvania convicted Caden of: 1) attempting to manufacture more than one kilogram of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846; (2) possessing 40 grams or more of a mixture or substance containing a detectable amount of P2P with the intent to manufacture methamphetamine in violation of 21 U.S.C. § 841(a)(1); and (3) possessing monomethylamine, a listed precursor chemical, knowing or having reasonable cause to believe that the listed chemical would be used to manufacture a controlled substance, that is methamphetamine in violation of U.S.C. § 841(d)(2).

During sentencing, Mr. Cusamano, testified about the amount of methamphetamine that could have been manufactured given the amount of methylamine recovered during the searches of the Hortter Street and Woodland Avenue locations.  Mr. Cusamano opined that the laboratories were capable of producing a combined

73.2 kilograms of pure methamphetamine.

On September 13, 2001, this Court sentenced Caden to 360 months imprisonment, five years of supervised release, ordered restitution in the amount of $5,000 and imposed a special assessment of $300.  The Third Circuit affirmed the conviction and sentence, and the United States Supreme Court subsequently denied _certiorari_.  See United States v. Caden, 322 F.3d 274 (Roth, J.), _cert. denied_, 540 U.S. 857 (2003).

On September 24, 2004, Caden filed the instant Motion pursuant to 28 U.S.C. § 2255.  Caden raises four grounds upon which he seeks relief.

First, Caden alleges ineffective assistance of counsel at his trial.  Caden's trial attorney did not retain an expert chemist to testify for the defense.  Caden argues that counsel's failure to retain such an expert compromised his ability to rebut the testimony of the Government's expert, particularly his testimony regarding the amount of methamphetamine that could have been manufactured given the amount of methylamine recovered during the DEA searches.

Second, Caden alleges that his trial counsel was ineffective for failing to interview or call to testify a witness named "Mr. Henry" who Caden describes as a "very important and needed witness."  (Doc. No. 144 at 5-6.)  As a result of this alleged failure by his trial attorney, Caden contends that he

suffered prejudice at trial because, had Mr. Henry testified, there is a reasonable probability that the result of the proceedings would have been different.

Third, Caden argues that his sentence is improper because the procedure employed by the Court to determine his sentence deprived him of his Constitutional rights.  Citing <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000) and its progeny, he claims that he is entitled to relief because certain of the Courts findings at sentencing were based upon facts not proven by a jury or admitted by him.

Fourth, Caden argues that his conviction was obtained by the unconstitutional failure of the Government to disclose exculpatory evidence.  Specifically, Caden asserts that the Government failed to disclose information memorialized on a DEA Report made during the execution of the search at Scully Welding Supply, Inc. on August 20, 1998.

## II. Standard of Review

Section 2255 permits a prisoner in federal custody to challenge the validity of his sentence.  28 U.S.C. § 2255.; see also <u>United States v. Eakman</u>, 378 F.3d 294, 297 (3d Cir. 2004). A petition submitted under Section 2255 may be filed at any time within one year from: (1) the date on which the conviction became final; (2) the date on which the impediment to making a motion

created by the government action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; and (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.  Id. § 2255.

### III. DISCUSSION

#### A.   Ineffective Assistance of Counsel

The Sixth Amendment guarantees criminal defendants the right to "reasonably effective" legal assistance.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  An attorney's performance is ineffective if a habeas petitioner demonstrates: (1) that "counsel's representation fell below an objective standard of reasonableness;" and (2) "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 688, 694.  Courts conventionally describe the two prongs of the Strickland test as the "performance prong" and the "prejudice prong."

The "performance prong" requires a court to assess whether counsel's representation was constitutionally deficient.

6

The Sixth Amendment, however, does not guarantee that a defendant receives either perfect representation or that his attorney's performance is error-free. Consistent with this understanding of the Sixth Amendment is the presumption "that counsel [was] effective" at trial. United States v. Farr, 297 F.3d 651, 658 (7th Cir. 2002).[1]  Thus, judicial scrutiny of whether an attorney's performance did in fact fall "below an objective standard of reasonableness" is not exacting. Strickland, 466 U.S. at 688; see also Affinito v. Hendricks, 366 F.3d 252, 258 (3d Cir. 2004).  In this regard, Strickland observed:

> It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. *A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight*, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

Strickland, 466 U.S. at 689 (emphasis added).  That an attorney's performance was effective therefore begins with the "strong presumption that counsel's conduct falls within the *wide range* of reasonable professional assistance." Id. (emphasis added);

---

[1] Attorneys at trial are, of course, not the only ones a defendant may accuse of being ineffective. See, e.g., United States v. Sawyer, 2005 U.S. Dist. LEXIS 18405 (E.D. Pa. Aug. 25, 2005) (considering an ineffective assistance of counsel claim against appellate counsel).

7

see also Kimmelman v. Morrison, 477 U.S. 365, 383 (1986).

If a petitioner establishes that his attorney's performance was constitutionally deficient, the court then turns to Strickland's "prejudice prong."[2]  The "prejudice prong" focuses exclusively on whether the outcome of the trial (or proceeding) would have been different but for the attorney's errors.  The standard for showing prejudice "is not a stringent one." Hull v. Kyler, 190 F.3d 88, 110 (3d Cir. 1999) (quoting Baker v. Barbo, 177 F.3d 149, 154 (3d Cir. 1999)).  A petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.; Lockhart v. Fretwell, 506 U.S. 364, 372 ("[T]he "prejudice" component . . . focuses on the question [of] whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.") (citations omitted).  And though this standard demands that a petitioner show more than "that the errors had some conceivable effect on the outcome of the proceeding," it does not require a showing that the error "more likely than not altered the outcome in the case." Strickland, 466 U.S. at 693; see also

---

[2] When an attorney's performance is judged to be reasonably effective within the meaning of the Sixth Amendment, a petitioner can not argue, as a matter of law, that the attorney's performance prejudiced the outcome of his trial (or the proceeding).

8

Hull, 190 F.3d at 110 (prejudice standard "is less demanding than the preponderance [of the evidence] standard").

### i. Expert Chemist

Caden first argues that his trial counsel rendered ineffective assistance of counsel by failing to procure an expert chemist to testify during his trial. Caden alleges that despite representations made to him by his attorney that the defense would retain such an expert, he proceeded at trial without one. At the trial and sentencing of Caden and his co-defendant Chorin, the DEA chemist testified about the methamphetamine making process as well as the amount of methamphetamine that could have been manufactured given the evidence seized during searches at both the Hortter Street and Woodland Avenue locations.

Caden now argues that because the defense did not offer its own expert, he was unable to adequately challenge statements made by the government's expert, impacting the outcome of his trial.

Caden has failed to meet the standards established in Strickland, under either the deficiency or prejudice prong as it relates to this claim for ineffective assistance of counsel. Caden did not provide the Court with sufficient evidence in his Motion, or at his 2255 hearing, to demonstrate that counsel's representation in this instance fell below an objective standard

of reasonableness.

At his 2255 hearing, Caden submitted to the Court the affidavit of Gene N. Geitzen, a forensic scientist, who rendered an opinion about the evidence seized from the Woodland Avenue location.[3]  Mr. Geitzen primarily opines that due to the lack of P2P recovered during the DEA search, theoretical yields of methamphetamine as suggested by the Government's expert were exaggerated.  The Third Circuit substantively addressed this claim in Caden's direct appeal, finding that it lacks merit.  Citing applicable case law, the Court held that "...a District Court may estimate the amount of controlled substance that defendant could manufacture from the precursor he possessed if he combined that precursor with the proportionate amount of missing ingredients."  See Caden, 322 F.3d at 280.  Thus, the Mr. Geitzen's report does not undermine the court's confidence in the analysis provided by the DEA chemist at trial.

Caden's trial attorney also testified at his 2255 hearing about his decision not to retain an expert, stating that it was a strategic one because an expert was not "appropriate or necessary in this case." (N.T. 10/12/06 at 13).  Courts seldom find an attorney's performance to be constitutionally deficient for

---

[3] With regard to the Woodland Avenue location, Caden was convicted only of possession of methylamine, a listed precursor chemical used to manufacture methamphetamine, in violation of 21 U.S.C. § 841(d)(2).  He was not charged with attempt to manufacture methamphetamine at this location.

10

making such a strategic determination.[4]  This reluctance to second guess an attorney's affirmative decision not to call an expert reflects the understanding that such a decision is fundamentally a "strategic choice[] made after [a] thorough investigation of [the relevant] law and facts.  Strickland, 466 U.S. at 690.

In light of the fact that Mr. Geitzen's report is limited to the Woodland Avenue location and its primary conclusion does not undermine the analysis made by DEA chemist, the Court fails to see how an defense expert would have assisted Caden at trial.  Accordingly, Caden has failed to demonstrate that counsel's performance fell below an objective standard of reasonableness.

Applying the second requirement under Strickland is therefore unnecessary because Caden has failed to demonstrate prejudice.  The alleged unprofessional error on the part of his attorney in no way undermines the Court's confidence in the outcome of his trial.

---

[4] See, e.g., Huffington v. Nuth, 140 F.3d 572, 582 (4th Cir. 1998) (decision to not call ballistics expert a reasonable strategic decision in light of defense's trial strategy of asserting that defendant was not even present during the commission of the crimes); United States v. Kirsh, 54 F.3d 1062, 1072 (2d Cir. 1995) (counsel's decision to not call fingerprint expert to discuss possibility of fingerprint forgery "was plainly a tactical decision and hardly bespeaks of professional incompetence"); United States v. McGill, 11 F.3d 223, 227-28 (1st Cir. 1993) (approving counsel's decision to not call an easily impeachable firearms expert as a reasonable tactical decision when the "information sought from the witness had already been introduced from another expert," even if on cross examination).


**ii. Mr. Henry**

Caden further alleges that his trial counsel was ineffective for failing to seek the testimony of Larry Henry, an individual identified on the DEA form completed during the search of Scully Welding Supply, Inc.  During an interview conducted by federal agents during the execution of the search at Scully, an employee stated that an individual named "Larry Henry" was involved in the business transaction regarding the rental of the methylamine tanks that were ultimately recovered during searches of the Hortter Street and Woodland Avenue locations.  Without explanation, Caden alleges that "Mr. Henry's testimony would have assisted Caden and affected the jury's consideration of the final verdict..."  (Doc. No. 153 at 7.)  However, Caden completely fails to provide the court with, even an inkling, about what Mr. Henry would have testified at trial or how it may have assisted his defense.  The Government accurately points out this shortcoming in its Answer, but Caden fails to clarify his position in either of his Rebuttals submitted to the Court.

Caden was further unable to explain to the Court at his 2255 Hearing how Mr. Henry's testimony would have assisted his defense.  Absent that information, it is unclear how this court may construe his attorney's conduct as deficient absent a reasonable explanation about what information Mr. Henry may have added to the proceeding.  Thus, Caden is not entitled to relief

pursuant to Strickland under either the deficiency or prejudice prongs as it relates to this claim for ineffective assistance of counsel.

### B. Alleged Brady Violation

In a manner in which the Court finds confusing, Caden endeavors to argue that the Government somehow hid exculpatory evidence from him by failing to disclose information regarding "Mr. Henry", a name elicited by the Government during an interview conducted while searching Scully Welding Supply, a supply company from which Caden rented tanks containing monomethylamine. Caden alleges that "Mr. Henry's testimony would have assisted Caden and affected the jury's consideration of the their final verdict..." Caden make this bold assertion without providing even a scintilla of information about what Mr. Henry would have testified about at trial.

The Government is required to disclose material exculpatory evidence to the defendant under Brady v. Maryland, 373 U.S. 83 (1963). A new trial is warranted when there is a reasonable probability that disclosure of undisclosed evidence would have altered the outcome of the case. United States v. Bagley, 473 U.S. 667 (1985); Government of Virgin Islands v. Martinez, 780 F.2d 302, 306 (3d Cir. 1985). In addition, when there is a factual issue regarding whether a Brady violation occurred and such claims are not frivolous or palpably incredible,

13

a defendant is entitled to a hearing by the court.  <u>Martinez</u>, 780 F.2d at 306 (citing <u>United States v. Alexander</u>, 748 F.2d 185, 193 (4th Cir. 1984); <u>United States v. Dansker</u>, 565 F.2d 1262 (3d Cir. 1977), cert. dismissed, 434 U.S. 1052 (1978).

Caden alleges that the Government withheld exculpatory information relating to Mr. Henry.  This court does not agree.  Foremost, by asserting that his attorney was constitutionally ineffective for failing to investigate Mr. Henry or call him to testify at trial, Caden essentially admits that the information was not hidden from him.[5]  While it is unclear if the Government provided Caden or his attorney with a copy of the DEA Report in pre-trial discovery, a review of the record shows that they likely did.  The report was introduced as an exhibit at trial and co-defendant Chorin's attorney utilized the report during his cross-examination of the DEA agent who conducted the search at Scully.  (N.T. 12/1/99 at 106-8.)

Moreover, Caden fails to state how testimony from Mr. Henry would have assisted him at trial.  In the absence of such information, there can be no finding that the outcome of the trial would have been different.  <u>See Kyles v. Whitley</u>, 514 U.S. 419, 434 (1995).  Thus, there was no discernable <u>Brady</u> violation on the

---

[5]Caden also conceded during his 2255 hearing upon cross-examination that his attorney was aware of the DEA Report as well as the existence of Mr. Henry at the time of his trial.  (N.T. 10/12/06 at 31-32.

14

part of the Government and Caden is not entitled to a new trial.

### C. Non-Retroactivity of Booker

In Caden's Motion and subsequent Rebuttals, he cites Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2348 (2000) and United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2004) arguing that his sentence should be vacated because it was based on facts not admitted by him or proven to a jury.

In Blakely, the United States Supreme Court addressed whether the ruling in Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000) applied to state determinate sentencing schemes. The Blakely Court found that Washington State's determinate sentencing scheme, a scheme similar to the Federal Sentencing Guidelines, violated the Sixth Amendment right to a jury trial. Id. at 304-5. The Court reasoned that under the scheme, judges were imposing sentences not based upon facts reflected in the verdict of the jury or admitted by the defendant. Id. at 301-6. The opinion did not address whether the ruling in Apprendi applied to Federal Sentencing Guidelines. It was not until the Supreme Court decided Booker that it concluded that the ruling also applies to Federal Sentencing Guidelines. 543 U.S. 220, 125 S.Ct. 738 (2005).

The issue of retroactivity with regard to Booker was previously addressed by the Third Circuit in Lloyd v. United

15

States, 407 F.3d 608, 615 (3d Cir. 2005). Applying the standard set forth in Teague v. Lane, 489 U.S. 288, 109 S. Ct. 1060 (1989), the Lloyd Court found that although the rule announced in Booker was "new" in that it was "not dictated by precedent", it was not a "watershed" rule, as required for retroactive action under Teague. Lloyd, 407 F.3d at 611-13. The Court explained that in order for a rule to be deemed "watershed", it must "implicate the fundamental fairness and accuracy of the criminal proceeding." Id. at 612. The Court determined that the rule in Booker was not "watershed" under the definition in Teague because it was not a "rule without which the likelihood of an accurate conviction is seriously diminished." Id. at 616 (quoting Teague, 489 U.S. at 313). Thus, the Lloyd court concluded that Booker does not apply retroactively to cases on collateral review where the judgment became final before January 12, 2005.

In the instant case, Caden's conviction became final when the Supreme Court denied him certioari on October 6, 2003, more than a year before the Court decided Booker. Thus, because Caden's conviction became final prior to Booker and because the holding in Booker is not retroactive, Caden is not entitled to relief on this claim.

## IV. Certificate of Appealability

Finally, the Court must determine whether a certificate of

16

appealability ("CoA") should issue.  See Third Circuit Local Appellate Rule 22.2.  A certificate of appealability is appropriate only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Petitioner must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). The Court concludes that there are no grounds to issue a certificate of appealability.  Caden has failed to meet the standard established in Strickland to support either of his claims for ineffective assistance of counsel.  He has also failed to establish a Brady violation on the part of the Government or that his sentence is unconstitutional.  Accordingly, the Court denies Caden a CoA with respect to all of his claims.

### IV. Conclusion

For the foregoing reasons, the Court concludes Caden's claims of ineffective assistance of counsel fail to meet the standards establish in Strickland, the Government did not violate Brady and Booker does not apply retroactively to Caden's sentence. Thus, Caden is not entitled to a new trial or to have the jury verdict set aside or his sentence corrected.  An order follows.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| United States of America, | : | CIVIL ACTION |
| | : | |
| | : | 04-cv-4500 |
| | : | 98-cr-450-1 |
| v. | : | |
| | : | |
| Kevin Robert Caden | : | |

### ORDER

     AND NOW, this  12th  day of December 2007, upon consideration of the Defendant's motion pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, the Government's Response, Defendant's Rebuttal, the Government's Response thereto and the Defendant's Rebuttal and after an evidentiary hearing, it is hereby **ORDERED:**

1. The Defendant's motion is **DENIED**;
2. The Court finds there are no grounds to issue a certificate of appealability.

                               BY THE COURT:

                               s/J. Curtis Joyner
                               J. CURTIS JOYNER, J.